THE HONORABLE RICARDO S. MARTINEZ

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR24-218-RSM |
| Plaintiff, | ) | |
| | ) | SENTENCING MEMORANDUM |
| v. | ) | |
| MICHAEL P. RAINERI, | ) | |
| Defendant. | ) | |

## I. INTRODUCTION

Mr. Raineri is 63 years old and in good health despite being HIV positive. After working for decades in local banking and personal finance, he now earns minimum wage as a receptionist for a dentist's office. He is much valued there. Mr. Raineri has never before been accused of a crime or any type of professional misconduct. To the contrary, other than the criminal conduct for which he now appears for sentencing, Mr. Raineri is universally described as uncommonly generous and self-sacrificing. Now, Mr. Raineri is trying to make amends. He has pleaded guilty, dissolved his finances to pay restitution to the victim of his crime, and appears before this Court for judgment.

Counsel respectfully offers the following sentencing memorandum in support of the probation officer's twelve-month-and-one-day sentencing recommendation. Counsel hopes the Court will understand that the following is intended to place

SENTENCING MEMORANDUM
(*United States v. Raineri*, CR24-218-RSM) - 1

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

1  Mr. Raineri's conduct in context, rather than excuse it, and should not undermine
2  Mr. Raineri's acceptance of responsibility or frequently expressed remorse. *See* Ex. 1.

3  **II.    BACKGROUND**

4        In 1981, when Mr. Raineri was 19 years old, he came out as gay to his mother
5  and then, shortly thereafter, to his father. Forty-five years ago, the world was more
6  dangerous for a young gay man, so both his parents worried about how Mr. Raineri's
7  "lifestyle" would affect him into adulthood. Mr. Raineri's mother, Gloreen Raineri,
8  supported him despite her fears. But Mr. Raineri's father could not tolerate having a
9  gay son. On the same day that Mr. Raineri came out to him, Mr. Raineri's father
10 announced that he was seeking a divorce. He moved to Costa Rica, where he started a
11 new family. Mr. Raineri had no meaningful contact with his father after he left the
12 country.

13       The departure of Mr. Raineri's father changed Mr. Raineri's relationship with his
14 mother in profound and positive ways. Gloreen opened a restaurant in the Capitol Hill
15 neighborhood, called "Glo's," that became a central gathering point for Seattle's gay
16 community.[1] In the 1980s and early 1990s, AIDS was devastating the gay community
17 in Washington. But the government largely ignored the disease, because they viewed it
18 as an epidemic that only killed gay men. As Mr. Raineri entered adulthood, AIDS had a
19 100% mortality rate, no treatment, and, until 1985, no reliable test.

20       From their position at Glo's in the heart of Capitol Hill, Mr. Raineri and his
21 mother saw AIDS's devastation up close. He cared for many of his friends as they
22 wasted away, lost their minds,[2] or succumbed to opportunistic diseases like pneumonia.

---

[1] *See* obituary: https://www.legacy.com/us/obituaries/seattletimes/name/glo-raineri-obituary?id=29284959 (describing Glo as the "Mother of Capitol Hill.").

[2] Counsel, who lived in San Francisco during the 1980s and 1990s, vividly remembers the horrors of AIDS-related dementia (*see HIV and Dementia*, Johns Hopkins Med., https://www.hopkinsmedicine.org/health/conditions-and-diseases/hiv-and-aids/hiv-and-dementia [https://perma.cc/4P6C-NPNU] (last visited Sept. 18, 2025)) and AIDS-

SENTENCING MEMORANDUM
(*United States v. Raineri*, CR24-218-RSM) - 2

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

1  Mr. Raineri's three-year relationship with his first love, Scott, ended when Scott died of
2  AIDS. Mr. Raineri was able to avoid contracting HIV until much later because he
3  narrowed his life to work, spending time with his mother at her restaurant, and
4  providing care to sick members of his community.
5       The habit of care that Mr. Raineri developed during the AIDS crisis has
6  continued through the remainder of his life. In addition to nursing his mother through
7  her long illness, Mr. Raineri has volunteered for 25 years with the City of Hope cancer
8  foundation. Ex. 2. Jon Olsen, a firefighter, describes how Mr. Raineri gave up his home
9  when Mr. Olsen's mother was dying of cancer so that Mr. Olsen could be with his
10 mother in her final days. *Id*. Eve Nehring likewise writes to the Court about
11 Mr. Raineri's efforts to support his mother and sister as they died, including setting up a
12 hospice bed in his apartment for his sister and inviting her husband to live with them.
13 Ex. 3. As examples of his character, she notes that Mr. Raineri gathered neighbors to
14 help a student who needed transportation and collected donations for a recently
15 homeless person moving into a new home. *Id*. Kirk King, now Mr. Raineri's employer,
16 also describes Mr. Raineri's sacrifices for people suffering poor health or deprivation.
17 Dr. King opines that Mr. Raineri's example has taught him to be a "better and more
18 compassionate person." He writes to the Court of what he saw during the period
19 Mr. Raineri committed these crimes, and what he's seen of Mr. Raineri's remorse in the
20 years since. Ex. 4.
21       Mr. Raineri's career in banking began when he found a college job as a teller at
22 one of the original twelve branches of Washington Mutual Bank. Over the next twenty
23 years, Mr. Raineri rose through the ranks through a series of mergers and takeovers,
24 until he ended his career in banking as district manager for Wells Fargo. In the era of

---

25 related wasting syndrome (*see Wasting Syndrome, Weight Gain and HIV*, Int'l Ass'n of
26 Providers of AIDS care, July 2025, https://www.iapac.org/fact-sheet/wasting-syndrome/ [https://perma.cc/FQU4-84CX]).

SENTENCING MEMORANDUM
(*United States v. Raineri*, CR24-218-RSM) - 3

**FEDERAL PUBLIC DEFENDER**
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

internet banking, the local bank lost its place in the community and Mr. Raineri found himself with fewer opportunities to serve customers directly. Primarily for that reason, in approximately 2007, he transitioned to employment with a series of broker and investment advisor firms.

Over the course of approximately sixteen years, Mr. Raineri managed more than 25 million dollars for roughly 60 clients. But he stole only from Victim 1, with whom he developed a dysfunctional relationship that erased the boundaries between professional and client.[3] Somewhere along the line, Mr. Raineri's relationship with Victim 1 became poisoned by resentment. But rather than create boundaries or end the relationship, Mr. Raineri stole from the person who depended on him. At first, Mr. Raineri sometimes told himself that he was earning the money he took. At least once, he tried to remove himself by urging Victim 1 to find another advisor. But Mr. Raineri knew that he was stealing, not earning, and acknowledges that nothing prevented him from confessing much earlier. Mr. Raineri does not deny that he stole for years, understood the wrongfulness of his conduct, and took steps to hide it.

It is no excuse—and probably no consolation to Victim 1—that Mr. Raineri's personal life was collapsing. During the period encompassing these crimes, Mr. Raineri was a frequent caretaker for his dying sister.[4] A romantic relationship ended painfully after eight years. Mr. Raineri's mother, always a source of support, had died years earlier after a long battle with cancer, during which Mr. Raineri was her only caretaker. Feeling increasingly alone and having survived most of the people closest to him, Mr. Raineri became deeply depressed. He began acting in impulsive, selfish, and self-

---

[3] For instance, discovery shows that Mr. Raineri paid and received reimbursement for about $18,000 in Victim 1's personal expenses. That sum, of course, is a fraction of the money involved in this fraud, but it helps illustrate the way that professional lines blurred within the context of Mr. Raineri's relationship with Victim 1.
[4] Mr. Raineri's sister died in 2023.

SENTENCING MEMORANDUM
(*United States v. Raineri*, CR24-218-RSM) - 4

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

destructive ways. It was in that mental place that Mr. Raineri stopped showing the generosity that had marked his first five decades and instead behaved in selfish, duplicitous ways towards Victim 1 by stealing money that he largely used for his own comforts. Mr. Raineri makes no excuse. He feels ashamed and profoundly remorseful.

A civil investigation preceded these criminal charges. Though Mr. Raineri was consumed with the final months of his sister's life, he cooperated with the investigation as much as he could. Mr. Raineri forfeited his license and, of course, left his firm, which provided Victim 1 a financial settlement amounting to about half of Victim 1's losses. In the years since his last unlawful act, Mr. Raineri has returned to the character that his community so admires. He now works as a receptionist at a friend's dental practice. Mr. Raineri has liquidated his retirement assets to pay restitution. He has accepted responsibility. And while he knows his words may not have much value, Mr. Raineri offers his deepest apologies to Victim 1. If he could repair the damage he caused and the trust he violated, Mr. Raineri would do it.

### III. DISCUSSION

Below are the 18 U.S.C § 3553(a) factors and their application to Mr. Raineri's case.

**A. Circumstances of the offense and history and characteristics of the defendant**

Mr. Raineri's crime is unusual in that, unlike most financial professionals convicted of fraud, his misconduct was confined to a single client. That fact is aggravating because it makes clear that Mr. Raineri's offense involved a significant breach of trust. But it also suggests that his motivation was more complicated than simple greed, but rather also was colored by the dynamics of the relationship and his own personal struggles. The fact that Mr. Raineri's only crime was limited to a specific

SENTENCING MEMORANDUM
(*United States v. Raineri*, CR24-218-RSM) - 5

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

situation in a 30-year career provides some reason for confidence that Mr. Raineri will never reoffend.

Counterbalancing the seriousness of Mr. Raineri's theft from Victim 1 is Mr. Raineri's personal history, which is overwhelmingly positive. At age 63, he has never been accused of any misconduct, professional or otherwise. Mr. Raineri's community describes him as caring and self-sacrificing. Even Victim 1 likely would agree that Mr. Raineri frequently made himself available to help when asked.

Counsel knows that the Court has seen other defendants, also reeling from some sudden trauma, who do inexplicably terrible things that seem to be entirely out of character. Here, abandonment, grief, and the cumulative impact of decades of loss contributed to Mr. Raineri, in this single context, acting contrary to the character he had always shown. But it remains true that before, since, and to a great extent during the period he committed these crimes, Mr. Raineri also behaved in uncommonly kind and generous ways. That long history merits the Court's notice.

### B.    Seriousness of the offense/punishment

Mr. Raineri does not ask to get away scot-free. Indeed, the probation officer will recall that Mr. Raineri spoke plainly about paying for his crime. But any period of imprisonment will be in addition to the significant punishment Mr. Raineri has already received. His conduct cost him his reputation, his relationships, his employment, and his self-respect. These consequences, coupled with a year-and-a-day prison sentence, provide just punishment and reflect the seriousness of Mr. Raineri's offense.

### C.    Deterrence/protection

Mr. Raineri's letter to the Court shows that imprisonment is unnecessary to provide specific deterrence. But even if he were not so remorseful, imprisonment is unnecessary to protect the public because Mr. Raineri will have no further opportunity to reoffend. At age 63, carrying a fraud conviction that will preclude him from working

SENTENCING MEMORANDUM
(*United States v. Raineri*, CR24-218-RSM) - 6

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

in the field in which he committed these crimes, Mr. Raineri has found work as a receptionist in a dentist's office (unlike some other defendants who start new money-making businesses). Without employment in the financial industry, Mr. Raineri poses no danger to the community.

Nor is additional imprisonment needed to provide general deterrence. No financial advisor would look at the collapse of Mr. Raineri's life—including the prospect of imprisonment, the lifelong ignominy of a felony conviction, and old age supported by employment at minimum wage—and believe that client theft is worth the risk. "[I]ncarceration sends a stronger message than probation does. But 3553(a) does not command courts to send the strongest message possible; it commands them to impose a sentence that is 'sufficient, but not greater than necessary' in the circumstances of each case. 18 U.S.C. § 3553(a)." *United States v. Warner*, 792 F.3d 847, 857 (7th Cir. 2015) (affirming district court's sentence of probation where Guidelines range was 46 to 57 months). The probation officer has correctly concluded that 12 months and one day in prison is enough.

### D.    The need to provide services, including medical care

Recent investigations have proven that even the best facilities within the Bureau of Prisons cannot adequately care for the people confined inside. Here in the Northwest, internal audits have uncovered significantly unsatisfactory medical treatments at both Sheridan FCI and the Federal Detention Center in SeaTac.[5] Inadequate staffing makes all facilities insecure and more dangerous, particularly for an older, gay man like Mr. Raineri. Also, though his HIV viral load is well controlled, Mr. Raineri remains

---

[5] *See* U.S. Dep't of Justice Off. of the Inspector Gen., 24-070, *Inspection of the Federal Bureau of Prisons' Federal Correctional Institution Sheridan* (May 22, 2024); and U.S. Dep't of Justice Off. of the Inspector Gen., 25-081, *Inspection of the Federal Bureau of Prisons' Federal Detention Center SeaTac* (Sept. 10, 2025).

SENTENCING MEMORANDUM
(*United States v. Raineri*, CR24-218-RSM) - 7

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

immunocompromised, and thus more vulnerable to the infections that spread quickly through prisons. This factor weighs strongly against imprisonment.

### E. Guidelines

Counsel agrees with Senior Probation Officer Neumeister's original Guideline calculations, which included an adjustment for Zero-Point Offender.

The Guideline analysis is complicated because, on September 3, 2025, after the final Presentence Report was provided, government emailed that it would object in its memorandum to the probation officer's calculations because it does not believe Mr. Raineri should get the benefit of the zero-point offender adjustment. Then yesterday, September 18, 2025, U.S. Probation filed an amended report that eliminates that adjustment without altering its overall recommendation. That change apparently was based on "victim impact information" that was not simultaneously provided to the defense (and may not have been provided to the defense at all).[6]

Counsel asks the Court to conclude that the government forfeited its objection to the zero-point offender adjustment by not properly objecting, and by not identifying the basis of the objection until seven days before a hearing that had already been rescheduled several weeks by the Court. The government's failure to object in a timely manner or include the defense in its correspondence with U.S. Probation prevented the defense response the rules require. Deprived of that response, the probation officer was forced to modify the presentence report without the normal investigation into whether the government's factual presentation is accurate and complete, and for that reason has not included the necessary information to rule on the government's objection. For instance, the single-page analysis of Victim 1's assets provided yesterday omits the bank account that at one point, at least, contained the bulk of Victim 1's liquid assets.

---

[6] The government did produce the defense with a single-page financial breakdown on September 18, 2025, and some previously undisclosed financial documents earlier this week.

SENTENCING MEMORANDUM
(*United States v. Raineri*, CR24-218-RSM) - 8

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

And the calculations show a diminution in Victim 1's liquid assets that far exceeds the amount lost to fraud. The numbers are what they are, and counsel does not intend to debate them to no purpose, but the government's delay has made it difficult, if not impossible, to determine accurately how much of Victim 1's hardship is attributable to spending and how much is attributable to Mr. Raineri.

Even if the Court accepts the government's analysis, the Court should vary under 18 U.S.C. § 3553(a) to the sentence recommended by U.S. Probation. In every way that matters, Mr. Raineri is a true first offender and should receive the sentencing benefit due to a first offender.

### F. Unwarranted disparity

Probation's recommended sentence would avoid unwarranted disparity. JSIN data shows that only 28% of similarly situated offenders received sentences within the Guidelines, while 70% received sentences below the Guideline range.[7] While the average and median sentences appear to be about two years with the zero-point offender adjustment and a little less than three years without it, few first offenders are Mr. Raineri's age or present the combination of mitigating factors here. And in this district, similar fraud convictions often receive sentences consistent with U.S. Probation's recommendation.

### G. Restitution

By the time of sentencing, Mr. Raineri will have disposed of all his assets to pay for restitution. He will make future payments from his wages. Though Mr. Raineri may only be able to pay a couple hundred dollars (or less) each month, if that income would be valuable to Victim 1, the Court should not impose a sentence that would unnecessarily deny it to the Victim. Because Mr. Raineri cannot make those payments

---

[7] This includes the people who receive a below-Guideline sentence that includes a government motion.

SENTENCING MEMORANDUM
(*United States v. Raineri*, CR24-218-RSM) - 9

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

while in custody, and because imprisonment damages employment prospects generally, this factor also weighs against imprisonment.

Mr. Raineri has agreed to pay restitution and the amount is not in dispute, but counsel has not yet received information about how to divide the funds between Victim 1 and the insurance company that paid the settlement. Accordingly, counsel suggests that the Court set a separate hearing to enter a restitution order, with the understanding that the parties can move to vacate that hearing when the proper apportionment is clear.

## IV.  CONCLUSION

Mr. Raineri acknowledges that he violated the trust of Victim 1 to take his money for a period of years. He will work the remainder of his life to make up for that crime. But this theft is an aberration from an otherwise remarkable life. Now years separated from Mr. Raineri's only crime, a twelve-month-and-one-day sentence is enough.

DATED this 19th day of September 2025.

Respectfully submitted,

s/ *Gregory Murphy*
Assistant Federal Public Defender
Attorney for Michael P. Raineri

SENTENCING MEMORANDUM
(*United States v. Raineri*, CR24-218-RSM) - 10

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100